**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **RODNEY DAWSON,** | : | **Civil Action No.: 09-6274 (JAP)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **OCEAN TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**ARPERT, U.S.M.J**

## I.    INTRODUCTION

This matter having come before the Court on a Motion by Plaintiff Rodney Dawson ("Plaintiff") to compel certain discovery including, among other things, personnel and internal affairs files [dkt. entry. no. 20] and, separately, on a Motion by Defendants Ocean Township ("Township"), Antonio Amodio, Jr. ("Amodio"), Patrolman Ryan Vaccaro ("Vaccaro"), and Sergeant Gregory Tongring ("Tongring") (collectively, "Defendants") to compel certain discovery from Plaintiff including, but not limited to, answers to interrogatories and responses to requests for productions [dkt. entry no. 21], both returnable February 22, 2011.  Defendants filed opposition on February 7, 2011.  Plaintiff filed opposition on February 14, 2011.  Defendants filed a reply on February 17, 2011.  For the reasons stated herein, Plaintiff's Motion is granted in part and denied in part and Defendants' Motion is granted in part and denied in part.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about August 5, 2008, Plaintiff "was driving...a large truck within the scope of his employment as an independent carrier and owner of RB Dawson Transport to deliver materials to Hillel Yeshiva, a school in Ocean Township".  *See* Pl.'s Comp., dkt. entry no. 1 at 2.  While the

truck was being unloaded, Plaintiff "noticed a missed call on his cellular phone and retrieved messages from his voicemail", one of which was "from an Ocean Township police officer informing Plaintiff that [he] had some property of his", including a license plate and advised Plaintiff "to call the police station". *Id*. at 2-3. Plaintiff alleges that he "called the Ocean Township Police Department police officer" and was informed "his...truck...caused damage to a stop sign in the area and advised Plaintiff to wait for a patrol unit to be sent to his location". *Id*. at 3. While waiting for the police to arrive, Plaintiff "examined his vehicle", "found no damage", and noticed that "his license plate was still secured to his vehicle". *Id*. Upon calling the Ocean Township Police Department a second time, Plaintiff was "instructed...to find a way to get to the police station". *Id*. Plaintiff alleges that he "retrieved his credentials from his truck", was "given a ride from a Yeshiva member", and was "met by Vaccaro" when he arrived at the Ocean Township police station. *Id*. Thereafter, Plaintiff alleges that Vaccaro told him "that he would take a look at [Plaintiff's] truck and inspect it for damage". *Id*. Plaintiff told Vaccaro "that his truck was at...Yeshiva being unloaded" whereupon Vaccaro "asked Plaintiff for his credentials". *Id*. Plaintiff then asked "if [Vaccaro] was going to inspect [his] truck for damage prior to issuing any summonses" and, in turn, Vaccaro "refused to inspect Plaintiff's truck" and "threatened to arrest Plaintiff" after asking for Plaintiff's credentials again. *Id*.

Plaintiff alleges that after asking "Vaccaro how the police had gotten his cell phone number", "where his alleged license plate was being kept", "why [Vaccaro] was going to arrest him", and requesting that "Vaccaro conduct an investigation into the incident", Vaccaro "pushed Plaintiff against a wall". *Id*. at 3-4. Subsequently, Plaintiff alleges, he "was...assaulted by Vaccaro, Tongring, and/or John Does 1-5". *Id*. at 4. Plaintiff maintains that his arms were yanked behind his back and that his shoulder was dislocated, "causing...excruciating pain". *Id*.

2

Plaintiff further alleges that he "was forced to sit on the floor of the police station for an extended period of time with tightly applied handcuffs and a dislocated shoulder without any medical assistance". *Id.* Plaintiff was charged with "Obstructing the Administration of Law, *N.J.S.A.* 2C:29-1a, Careless Driving, *N.J.S.A.* 39:4-97, Failure to Report a Motor Vehicle Collision, *N.J.S.A.* 39:4-129, and Leaving the Scene of a Motor Vehicle Accident, *N.J.S.A.* 39:4-130". *Id.* Plaintiff states that he "was acquitted of all motor vehicle violations" on January 6, 2009 and that he was "acquitted of Obstructing the Administration of Law" on May 15, 2009. *Id.*

Thereafter, Plaintiff filed a Complaint alleging violations of 42 U.S.C. § 1983 including "excessive force" (*Id.* at 4-5), "false arrest/imprisonment" (*Id.* at 5-6), "supervisory liability" (*Id.* at 6-7), "abuse of process" (*Id.* at 7-8), "malicious prosecution" (*Id.* at 8-9), "failure to intervene" (*Id.* at 9-10), "unlawful policy, custom, practice/inadequate training" with respect to "(1) unlawfully and maliciously assaulting, arresting and harassing citizens, (2) intentionally, recklessly and/or negligently misrepresenting the facts of arrests and/or other police-citizen encounters, (3) falsifying police and/or other official records, (4) withholding and/or mishandling evidence, (5) making false arrests, and/or (6) using unreasonable and excessive force" (*Id.* at 10-12), and, separately, state law violations including "abuse of process" (*Id.* at 14-15), "malicious prosecution" (*Id.* at 15-16), "assault and battery" (*Id.* at 16-17), "false arrest/imprisonment" (*Id.* at 17-18), and deprivation of substantive due process under *N.J.S.A.* 10:6-1, et seq. (*Id.* at 18-19).

Due to ongoing discovery disputes between the parties, the Court ordered that any motions to compel discovery be filed by January 10, 2011. [dkt. entry no. 19]  Plaintiff's Motion is based on Plaintiff's contention that Defendants should be compelled to provide "internal affairs documentation...with respect to ...[Vaccaro and Tongring and for any other] officer employed by the Township of Ocean who may have had an internal affairs complaint filed

against him" with respect to excessive force, false arrest, malicious prosecution, or demeanor complaints which indicate violent propensities and/or untruthfulness during the five (5) years preceding the alleged incident as well as "personnel files" of Vaccaro and Tongring.  *See* Pl.'s Br. at 2-3; *see also* Pl.'s Proposed Form of Order, dkt. entry no. 20-3.  Plaintiff also seeks an award of counsel fees and costs.  *See* Pl.'s Proposed Form of Order, dkt. entry no. 20-3. Separately, Defendants' Motion is based on Defendants' contention that Plaintiff should be compelled to provide:

> -fully responsive answers to Tongring's interrogatories 1-14, 18, 19, and 20;
>
> -fully responsive answers to Amodio's interrogatories 1, 2, and 3;
>
> -the Owner's Manual for the truck which Plaintiff operated on August 5, 2008;
>
> -any and all tax returns filed by Plaintiff individually for tax years 2004 through the present;
>
> -any and all tax returns filed by R.B. Dawson Transport, Inc. for tax years 2004 through the present;
>
> -all other documents which support Plaintiff's claim for lost wages;
>
> -documents supporting Plaintiff's claim for lost economic opportunity; and
>
> -photographs of Plaintiff's trailer and tractor taken on August 5, 2008 which were marked as D-4 in evidence at [Plaintiff's] Municipal Court trial.

*See* Def.'s Proposed Form of Order, dkt. entry no. 21-5.  The Court notes that Defendants have withdrawn their request to compel production of the Owner's Manual for the truck and trailer which Plaintiff operated on the date of the alleged incident.  *See* Def.'s Reply Br., dkt. entry no. 24 at 1.  The Court also notes that fact discovery ended on December 31, 2010. [dkt. entry no. 16]

A. **Plaintiff's Arguments in Support of his Motion to Compel**

1. **The discovery sought is basic to a claim brought under 42 U.S.C. § 1983.**

Citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001), *Simmons v. City of Philadelphia*, 957 F.2d 1042 (3d Cir. 1991), *Taylor v. Plousis*, 101 F. Supp. 2d 255 (D.N.J. 2000), *Vega v. Merlino*, 2005 WL 1541061 (D.N.J. 2005), and *Suarez v. Camden County Bd. of Chosen Freeholders*, 972 F. Supp. 269 (D.N.J. 1997), Plaintiff states that a Complaint "brought under Title 42 U.S.C. § 1983 against individuals or governmental entities for a violation of a constitutional right...must allege the specific constitutional right alleged to be violated and that the deprivation was committed by those acting under color of law, as well as minimal facts which, if proven, would be sufficient to hold Defendants liable for the deprivation".  *See* Pl.'s Br. at 3.  Plaintiff maintains that his Complaint "meets these criteria" and notes that he "seeks to hold...Defendants directly responsible" for his injury.  *Id.* at 3-4.

Citing *City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985), *Monell, A.M. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572 (3d Cir. 2004), *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003), *Bielevicz v. Dubinon*, 915 F.2d 845 (3d Cir. 1990), *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), and *Andrews v. Camden County*, 95 F. Supp. 2d 271 (D.N.J. 2000), Plaintiff acknowledges that "liability may not be predicated upon *respondeat superior* but must be founded upon evidence that the [municipality] itself supported a violation of constitutional rights" and that he "must show that constitutional deprivation resulted from an official custom or policy, or from the direct actions of an official with authority to establish government policy".  *Id.* at 4.  Citing *Natale*, *Bielevicz*, *Boston v. New Brunswick Police Department*, 2005 WL 1661582 (D.N.J. 2005), *Simmons*, and *Bd. of County Comm'rs of Bryan*

5

*County v. Brown*, 520 U.S. 397, 404 (1997), Plaintiff maintains that "policy is shown where the official with decision-making authority actually establishes a policy" and that "custom can be shown by proving that an informal course of conduct or practice, although not specifically endorsed or authorized by law, is so well settled as to have the force of law". *Id.* Citing *Beck, Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992), *Natale, Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989), *Sample v. Diecks, S.R.O.*, 885 F.2d 1099 (3d Cir. 1989), *Beers-Capitol, Brandon v. Holt*, 469 U.S. 464 (1985), *Bielevicz, Brown v. Monmouth County Sheriff's Dept. of Corrections & Medical Dept.*, 2005 WL 1116370 (D.N.J. 2005), *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982), *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), and *Simmons*, Plaintiff maintains that "the course of conduct giving rise to an unofficial custom can be proven in a myriad of ways, including the showing of a pattern of misconduct through prior incidents, ...proof of knowledge and acquiescence in unlawful conduct, ...tolerating, ignoring and avoiding taking remedial action with respect to a given course of conduct, ...failing to implement or enforce adequate policies and procedures, ...failing to properly investigate complaints or discipline employees guilty of misconduct, ...failure to accept and/or discourage complaints, ...the failure to keep and maintain proper records including the tracking of complaints of misconduct, ...failure to have adequate investigation procedures, ...[or] failure to adequately train". *Id.* at 4-5. Importantly, Plaintiff notes that "it must also be shown that the unlawful custom would most likely lead to a constitutional violation and that the [municipality] knew about it or that it was so obvious it can be inferred that they did". *Id.* at 5. Further, citing *City of Oklahoma City*, "Plaintiff...bears the...burden of proving that the unlawful policy or custom was a proximate cause of the injuries [such] that there is a substantial nexus between the unlawful conduct and the infringement of

constitutional rights".  *Id*.

Citing *Estate of Bailey by Oare v. County of York*, 768 F.2d 503 (3d Cir. 1985), *Black*, *Beck*, *Brandon*, *Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir. 1993), *Brice v. City of York*, 528 F. Supp. 2d 504 (M.D. Pa. 2007), *Hernandez v. Borough of Palisades Park Police Dept.*, 58 Fed. Appx. 909, 912 (3d Cir. 2003), Plaintiff contends that there is a wide range of the type of "proof available to establish a constitutional violation" in § 1983 cases, including, but not limited to, promulgation and implementation, or lack thereof, of deficient investigative and disciplinary procedures, complaints about particular individuals demonstrating a propensity to engage in improper conduct, shallow and meaningless review of such complaints, poor recordkeeping evidencing deliberate indifference, policies and procedures encouraging a code of silence or covering up officer misconduct, inadequate or improper training policies, or failure to investigate citizen complaints.  *Id*. at 5-6.  Citing *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989) and *Vega*, Plaintiff notes that "a single isolated incident of misconduct does not generally permit a finding of constitutional deprivation unless it has been the result of specific action by the policymaker or...is so egregious that an inference of a custom of tolerance can be made".  *Id*. at 6-7.  Thus, Plaintiff states that he "must identify a policy, practice, or custom that caused the constitutional violation and prove that policy, practice, or custom by obtaining access to appropriate discovery".  *Id*. at 7.

Citing *Farmer*, *Natale*, *Stoneking*, *Sample*, *Simmons*, *Beers-Capitol*, *Turpin v. Mailet*, 619 F.2d 196 (2d Cir. 1980), *cert. denied*, 449 U.S. 1016 (1980), *Tennessee v. Garner*, 471 U.S. 1 (1985), *City of Canton*, *Monell* and *A.M.*, Plaintiff maintains that he "must also demonstrate deliberate indifference" and notes that same may be established by way of showing a failure to properly train, supervise, and/or discipline.  *Id*. at 7.  Plaintiff argues that "personnel records of

the individual defendants are extremely probative as to [the] training, supervision, and discipline of these defendants". *Id.* Plaintiff contends that there is a wide range of the type of proof available to demonstrate deliberate indifference including, but not limited to, "knowledge of a pattern of conduct or custom likely to lead to a constitutional deprivation and the failure to act upon that knowledge", "a policy, practice, or custom of failing to take action regarding complaints or by conduct shown to be condoned or acquiesced in", demonstration of "prior incidents with no remedial action", "acquiescence in a longstanding policy or custom of inaction", "failure to respond appropriately in the face of an awareness of a pattern of injury", "failure to implement [or] enforce existing policy [which creates] a situation likely to create a serious risk of harm", or "failure to train". *Id.* at 7-8.

Here, Plaintiff "points to the following potential policies and practices which would give rise to deliberate indifference in this case: failure to implement and execute appropriate...policies regarding use of force...", "failure to effectively investigate or discipline officers where complaints were made...", "failure to abide by and enforce existing polices", "failure to supervise", "failure to train", "failure to keep and maintain proper records", "failure to implement and maintain written policies and procedures for the investigation of complaints and discipline of employees", "failure to discipline", "failure to have a system in place [for] tracking and cross-tracking complaints", "failure to take affirmative action in the face of prior incidents, claims, [or] lawsuits". *Id.* at 8-9. Plaintiff argues that he "has come forward with sufficient facts based on...limited discovery...to show a good faith basis for proceeding with [his] constitutional claims". *Id.* at 9. As such, Plaintiff argues that he "is entitled to discovery with respect to custom, practice, pattern and usage" and is, therefore, "not only entitled to documentation with respect to internal affairs investigations initiated against the individually named defendants..., but

also as to other officers employed by the Township of Ocean". *Id*. Plaintiff notes that Defendants "have provided Internal Affairs Summary Report Forms for the years 2005-2009" and that "within these forms, internal affairs complaints are categorized into eight types: Excessive Force, Improper Arrest, Improper Entry, Improper Search, Differential Treatment, Demeanor, Other Rule Violation, and Other Criminal Violation". *Id*. Importantly, Plaintiff further notes that "the vast majority of complaints fall under the category of Demeanor or Other Rule Violation". *Id*. Plaintiff argues that "documentation with respect to Excessive Force and Improper Arrest complaints is obviously probative and should be produced". *Id*. Separately, Plaintiff argues that "without having the opportunity to review exactly what allegations were raised" under the Demeanor or Other Rule Violation categories of complaint, "Plaintiff has no idea as to whether these complaints involve false reporting, excessive force, malicious prosecution, mishandling of evidence, or mistreating detainees in custody" and "need not rely on the categorization placed on certain reports as determined by employees of Defendants". *Id*. Plaintiff argues that he "should be provided with information surrounding these complaints or be permitted to inspect the contents of these files in order to properly investigate his allegations with respect to policy, practice or custom and deliberate indifference". *Id*.

### 2. The discovery sought is relevant and calculated to lead to admissible evidence.

Citing FED. R. CIV. P. 26(b), *Caver v. City of Trenton*, 192 F.R.D. 154 (D.N.J. 2000), and *Jones v. Derosa*, 238 F.R.D. 157 (D.N.J. 2006), Plaintiff maintains that "discovery rules are to be construed liberally in favor of discovery of all relevant information, including all information reasonably calculated to lead to the discovery of admissible evidence". *Id*. at 10. Referencing *Jones*, Plaintiff argues that personnel files of individual defendant police officers and "information relating to [a municipality's] reports, investigations, and documents relating to

policies, procedures and all other members of the police department" are both "within the permissible scope of discovery" when a "Section 1983 claim [is asserted] directly against [a] municipality as opposed to solely against...individual officers". *Id*.  Citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988) and *Frazier v. Southeastern Pennsylvania Transportation Auth.*, 785 F.2d 65 (3d Cir. 1986), Plaintiff contends that he "is not required to provide either proof of [his] claims or a proffer of all available evidence because in civil rights cases much of the evidence can be developed only through discovery of materials held by defendant officials". *Id*. at 10-11.  Citing *Farmer v. Brennan*, 511 U.S. 825 (1994) and *Fletcher*, Plaintiff maintains that "summary judgment [has] been delayed pending completion of discovery" in § 1983 cases and district court findings of no deprivation have been reversed based upon "erroneous exclusion of evidence offered to show policy and custom in an excessive force case through prior incident".  *Id*.

Plaintiff argues that Defendants "cannot hide behind claims of burden or irrelevance to avoid their obligations under the law".  *Id*. at 11.  Specifically, Plaintiff contends that "it is the governmental entity [that] must pay the price for inadequate filing, tracking, and maintaining records relating to complaints of misconduct, notices of claims and lawsuits" and that Defendants "very failure to do so is evidence of deliberate indifference".  *Id*.  Plaintiff further states that "the Township may be shown to have purposefully created a recordkeeping system which avoids the disclosure of misconduct and makes it extremely difficult and cumbersome to obtain".  *Id*. Ultimately, Plaintiff argues that "the discovery requested is relevant, probative, likely to lead to admissible evidence, and must be produced".  *Id*.

**B.**     **Defendants' Arguments in Opposition to Plaintiff's Motion to Compel**

      **1.**     **Discovery of the entire Ocean Township Police Department's internal affairs files is not relevant to the Plaintiff's *Monell* claim and is abusive and disproportionate.**

Defendants note that "the core federal claims alleged against the individual defendants are (1) excessive force, (2) false arrest, (3) abuse of process, and (4) malicious prosecution" and that "no internal affairs complaints alleging false arrest, abuse of process, malicious prosecution, or any complaint that challenges the truthfulness of the individual police officer defendants exist". *See* Def.'s Opp'n Br. at 15.  Defendants argue that "Plaintiff's *Monell* claim is only actionable insofar as the core constitutional causes of action are viable" such that "if there is no underlying core constitutional violation, there is no *Monell* claim".  *Id.*  Citing *Bd. of the County Commissioners v. Brown*, 117 S. Ct. 1382, 1388 (1997), *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), and *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003), Defendants contend that in order to maintain his *Monell* claim, "Plaintiff must show that the Township of Ocean was (1) deliberately indifferent to a known risk as evidenced by an alleged failure to train, supervise or discipline Vaccaro and/or Tongring, and (2) that the deliberate indifference was the moving force behind the alleged violations of Plaintiff's civil rights on August 5, 2008".  *Id.*  Further, Defendants maintain that the Court's "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link...between a municipal policy or custom and the alleged constitutional violation".  *Id.*

Here, Defendants note that "the alleged constitutional violation[s] that [are] the subject of the discovery requests...[are] alleged excessive force, false arrest, and malicious prosecution/abuse of process" as "no other constitutional violation is alleged in the complaint and none is before the Court".  *Id*. at 15-16.  Defendants argue that "some other alleged case of

excessive force...by some other Ocean Township police officer...at some other time cannot form the basis for...Plaintiff's *Monell* claim" because "there is no logical connection between some unrelated alleged misconduct by another officer to some other citizen and the underlying conduct here that...can be shown to be the moving force behind the alleged excessive force on Plaintiff". *Id*. at 16.   Defendants maintain that in order "to convince this Court that the internal affairs complaints against other Ocean Township police officers, [including] those occurring after the incident involving Plaintiff, are reasonably calculated to lead to admissible evidence as against the Township..., Plaintiff must demonstrate: (1) that the excessive force complaints against the other Ocean Township police officers were valid..., (2) that their alleged excessive force did not result in further training, discipline or supervision, (3) that the failure to train and supervise or discipline the other officers was known to Vaccaro, and (4) that the Police Department's failure to train or discipline the other officers...was the moving force behind Vaccaro's alleged violation of Plaintiff's civil rights...".   *Id*.   Defendants argue that "there is simply no [such] logical connection".   *Id*.

### 2. The frequency of excessive force complaints in Ocean Township do not show a pattern of misconduct.

Defendants argue that, "taken to its logical and untenable extension, Plaintiff's avowed need to see the internal affairs files for the entire 60 plus member Ocean Township Police Department, over the course of 5 years, regardless of the nature of the internal complaint...would establish a precedent to extract internal affairs files from towns and cities...without any limitation".   *Id*. at 17.   Defendants contend that "this would result in a wholesale intrusion into confidentiality both for the officers and the public...[and] a great burden would be placed on municipalities to cull and sift through potentially hundreds of files and documents in order to satisfy plaintiffs even in cases where...the internal affairs records...[have] nothing to do with the

individual police officer defendants in the complaint". *Id*.

Defendants note that "in this case, there were a total of eight internal affairs excessive force complaints made...against a 60-62 member department over five years" resulting in a frequency of "1.6 complaints per year...against the entire Ocean Township Police Department". *Id*. Citing *Artiles v. Vitanza*, 2009 U.S. Dist. LEXIS 68820, at *98 (D.N.J. 2009), *Mariani v. City of Pittsburgh*, 624 F. Supp. 506, 511 (W.D. Pa. 1986), and *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985), Defendants argue that "this *de minimis* number of complaints hardly establishes a pattern of misconduct, even assuming that any of the complaints were valid", and "does not show that the officers who were [the] subject of the complaints deserved discipline...[or] how the alleged misconduct in those cases was the moving force behind the present action". *Id*. at 17-18. Citing *Professional Recovery Services v. General Electric Capital Corp.*, 2009 U.S. Dist. LEXIS 3889, at *11 (D.N.J. 2009), Defendants contend that "two unfounded excessive force complaints against Vaccaro in 2006 represents a complaint in .38%...of the citizen encounters he had that year" and that "requiring production of these materials would be neither relevant nor proportional" given that Plaintiff "has provided no standard to show that this frequency is disproportional". *Id*.

Defendants maintain that "Plaintiff should not be heard to argue that the burden of production...in this case is minimal since there have only been eight excessive force complaints filed in the five years requested" because in so doing, "Plaintiff will undercut his own theory as to why the discovery is justified (i.e. that the instances of unchecked excessive force in the Ocean Township Police Department were so widespread and systemic that they were the rule of law or that they established a custom of assaulting arrestees which was known to the Township)". *Id*. Defendants note that they "offered to produce...the Ocean Township Police Department internal

affairs files for excessive force of Vaccaro and the incident reports regarding the Monmouth County Prosecutor's Office's investigation" and that "Plaintiff rejected this offer" without making any "attempt to argue how a file pertaining to a complaint brought against another officer...is reasonably calculated to lead to admissible evidence against Vaccaro and Tongring". *Id*. at 18-19.  Defendants argue that Plaintiff's reliance on *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006) is misplaced, as that case "involved a subpoena served on the Township of Clinton and the individual police officers more than a year after the claims for municipal liability had been dismissed" and the court found that "plaintiff [had] failed to show good cause as to why the information regarding officers other than...[the individually named defendants] are relevant".  *Id*. at 19.  Importantly, Defendants contend that "based on...[the] particular language of the [*Jones*] opinion, it is unclear whether Plaintiff sought internal affairs and personnel files for the entire department...[or simply] training or other documents" and that "any commentary made...not pertinent to the issues actually decided is dicta".  *Id*. at 19-20.  Citing Fed. R. Civ. P. 26(b)(1) and *Robbins v. City of Camden*, 105 F.R.D. 49, at *54 (1985), Defendants argue that Plaintiff "makes no argument to demonstrate why the files against non-party police officers are relevant to the claims in this case" and that the "Court should not sanction..over-discovery and discovery abuses".  *Id*. at 20.

### 3.   Information that is deemed private and confidential is also entitled to protection from disclosure.

Citing *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000), *OMS Investments, Inc. v. Lebanon Seaboard*, 2008 U.S. Dist. LEXIS 94165, at *4 (D.N.J. 2008), *Bayer v. Township of Union*, 414 N.J. Super. 238, 273 (App. Div. 2010), and *State v. Kaszubinski*, 177 N.J. Super. 136, 138 (Law Div. 1980), Defendants note that "the Third Circuit recognizes that trial courts may limit intrusions into information that would compromise legitimate interests such as privacy

and...confidentiality", that "New Jersey law recognizes that maintaining the confidentiality of police personnel records is a matter of significant public interest", and that the "New Jersey Department of Law and Public Safety ("NJDOLPS") has...determined that police internal affairs files are confidential and that their disclosure is permitted on an extremely limited basis". *Id*. at 20.  Citing FED. R. CIV. P. 26(c), Defendants maintain that "the court has discretion to issue protective orders that impose limitations on the extent and matter of discovery" with "respect to maintaining the confidentiality of police personnel records". *Id*. at 20-21.

Defendants argue that "the Ocean Township Police Department is required to adhere to the confidentiality provisions of the Internal Affairs policy promulgated by the NJDOLPS...[and] recognizes...a significant public interest in the confidentiality of internal affairs files and in police officer personnel files". *Id*. at 21.  Citing the Certification of Captain Neil Ingenito, Defendants maintain that "the confidentiality of these records pertains to the nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials" such that "the complainants, witnesses and the subject officers have a substantial interest in the confidentiality of these records as well". *Id*.  Defendants argue that "disclosure of these records would have a chilling effect on complainants and witnesses" because "complainants who have been arrested and perhaps convicted of offenses would...be reluctant to air their cases again in order to provide discovery to plaintiffs" and "few witnesses will come forward if they know that they will be embroiled in a lawsuit years after their matter has been resolved". *Id*.  Further, "individual officers not involved with this case, but who may have had an internal affairs complaint made against them, have an interest in the confidentiality of their own records" as "disclosure would subject an officer to renewed scrutiny in a matter which has already been resolved". *Id*.

Citing *Bayer v. Township of Union*, 414 N.J. Super. 238, 273 (App. Div. 2010), Defendants note that "there was an *in camera* review of the internal affairs complaints against the defendant officers" wherein "the Appellate Division upheld the trial court's determination that nothing in the internal affairs files was relevant to the plaintiff's section 1983 claim...and endorsed the findings...that demeanor complaints which accused the officer of not being polite or comforting had nothing to do with violating a citizen's civil rights during an arrest". *Id.* at 21-22. In this case, Defendants argue that "Ocean Township internal affairs files are categorized in the same fashion as in Bayer" as "demeanor complaints relate to a citizen's perception of an officer's politeness...and no internal affairs complaint that concerns an alleged violation of a citizen's civil rights is considered a demeanor complaint". *Id.* at 22.

### 4. Discovery of personnel files is not relevant to Plaintiff's claim.

Initially, Defendants note that "the personnel files sought by Plaintiff were not referenced in Plaintiff's September 23, 2010 letter...nor were personnel files referenced in his October 20, 2010 deficiency letter". *Id.* Defendants maintain that "for this reason alone, the request to order production of personnel files should be denied" because "Plaintiff made no good faith effort to confer and resolve this issue prior to filing this motion". *Id.*

Separately, citing *Professional Recovery Services v. General Electric Capital Corp.*, 2009 U.S. Dist. LEXIS 3889, at *11 (D.N.J. 2009), Defendants note that "personnel files may contain information that is both private and irrelevant to [this] case and special care must be taken before...[they] are turned over to an adverse party". *Id.* Defendants maintain that "Ocean Township Police personnel files contain no information that is discoverable in this case" such as "information relating to internal affairs complaints or investigation" which are housed "in the internal affairs unit and marked as CONFIDENTIAL". *Id.* at 22-23. Instead, personnel files

"contain mundane information regarding the officer's benefits, work habits, and family". *Id.*

Defendants argue that "Plaintiff has not advanced [any] argument as to why the personnel files would contain relevant information...particularly...[in light of] Defendants' discovery responses indicat[ing] that there have been no lawsuits against the officers, there are no Title 59 notices of claim, and there have been no administrative actions, no discipline, and no criminal charges filed against them". *Id.* at 23.  Defendants argue that the case cited by Plaintiff for the proposition that a police department may be required to produce officer personnel files, *Denis v. City of Newark*, 30 N.J. Super. 304 (App. Div. 1998), "did not involve a *Monell*...[or] section 1983 claim" and "the Appellate Division held only that the production of the officer's employment file was appropriate because the plaintiff asserted a claim for negligent retention on the part of the [municipality]". *Id.*  Defendants note that there is "no claim for negligent retention pleaded" in this case". *Id.*

### C.   Defendants' Arguments in Support of their Motion to Compel

#### 1.   The answers to interrogatories sought by Defendants are relevant and should be provided.

Defendants maintain that "the discovery sought in this [Cross-Motion] is intended to flesh out the various allegations asserted in the complaint" and no argument claiming that same is irrelevant has been asserted by Plaintiff "in any of his discovery responses or at the meet and confer session on December 23, 2010".  *See* Def.'s Br. at 1-2.  Specifically, Defendants contend that "the interrogatory questions that remain unanswered go to the allegations in paragraphs 61 and 62 of the complaint, where it is alleged (in ¶ 61) that the Township of Ocean has an official policy, custom or practice of intentionally or recklessly, with deliberate indifference, failing to train, supervise, control and discipline Vaccaro and Tongring from maliciously assaulting, arresting and harassing citizens, intentionally...misrepresenting facts of arrests and of police-

citizen encounters, falsifying police and other official records, withholding or mishandling evidence, making false arrests and using excessive force". *Id*. at 2.   Separately, "paragraph 62 repeats these allegations, but alleges that there have been numerous citizen encounters involving Vaccaro and Tongring where they have frequently and customarily subjected citizens to physical and mental abuse, maliciously assaulted and arrested and harassed citizens, and intentionally misrepresented the facts of arrests, falsified police reports and other official records, made false arrests, mishandled evidence and withheld evidence and used excessive force". *Id*.

Defendants argue that "these allegations have no basis in fact", that "there was not a good faith basis to have made them", and that "the discovery responses that...Plaintiff has proffered thus far are an obvious attempt to avoid answering the interrogatories directly...because there is no evidence to support these claims". *Id*.   Citing FED. R. CIV. P. 11, Defendants argue that "these allegations should be withdrawn" and that "Plaintiff will voluntarily do so assuming...there is no evidence forthcoming...to support ¶¶ 61-62 of the complaint".   *Id*. at 2-3.   Specifically, Defendants seek fully responsive answers to interrogatories 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 18, 19, and 20 served by Tongring and fully responsive answers to interrogatories 1, 2, and 3 served by Amodio.   *See* Def.'s Proposed Form of Order, dkt. entry no. 21-5.

### 2.   The documents requested by Defendants are relevant and should be produced.

Defendants maintain that "the documents requested [in September 2010] are acknowledged to be relevant by Plaintiff and to be in Plaintiff's possession, custody or control". *Id*. at 3.   Defendants note that "Plaintiff's constant refrain is that he will produce [the requested documents] when he is able to", pointing out that Plaintiff "claims his tax returns and the tax returns of his company (R.B. Dawson Transport, Inc.) are with his accountant". *Id*.   Defendants ask "why Plaintiff cannot simply contact his accountant and request copies of the returns". *Id*.

18

Separately, Defendants "expected that Plaintiff would have been eager to produce any and all other documents that support his claim for lost wages and lost economic opportunity since these documents would potentially increase the value of his case". *Id*.  Defendants maintain that it is "hard to understand" why they "received an objection that the request for these documents was vague" and argue that "the supporting documents should be produced". *Id*.  Specifically, Defendants seek (1) the Owner's Manual for the truck which Plaintiff operated on August 5, 2008, (2) any and all tax returns filed by Plaintiff individually for tax years 2004 through the present, (3) any and all tax returns filed by R.B. Dawson Transport, Inc. for tax years 2004 through the present, (4) all other documents which support Plaintiff's claim for lost wages, (5) documents supporting Plaintiff's claim for lost economic opportunity, and (6) photographs of Plaintiff's trailer and tractor taken on August 5, 2008 which were marked as D-4 in evidence at his Municipal Court trial.  *See* Def.'s Proposed Form of Order, dkt. entry no. 21-5.

### D.   Plaintiff's Arguments in Opposition to Defendants' Motion to Compel

#### 1.   Interrogatory Answers.

Plaintiff notes that "the interrogatories at issue were numbered 1-14, 18, 19, 20 in the set propounded on behalf of Tongring" and that he "originally objected to responding in the manner requested on the basis that the information was in the possession of Defendants".  *See* Pl.'s Opp'n Br. at 1.  Plaintiff further notes that he provided a supplemental "answer to the interrogatories in question via correspondence dated January 5, 2011" by stating that he did not "currently possess specific information to respond in the manner requested" because Defendants "have not provided all information regarding citizen complaints, discipline, lawsuits, internal affairs complaints, or Title 59 notices with respect to other officers employed by Ocean Township other than Vaccaro and Tongring" and "have not provided information whereby

Plaintiff can list specific instances of the conduct described in each interrogatory as to Vaccaro, Tongring, and other Ocean Township Police Officers". *Id.* at 1-2.   Importantly, Plaintiff states that he "reserved his right to supplement his response to...interrogatories in the event...Defendants produce information sought...". *Id.* at 2.   In response, Defendants maintain that Plaintiff "has been provided with all evidence relevant and necessary to respond to Tongring's interrogatories regarding allegations in paragraphs 61 and 62 of the complaint" and "the only documents that exist which [Defendants have] not provided relate to two complaints for excessive force made against Vaccaro in 2006". *See* Def.'s Reply Br. at 2.   Defendants reiterate that they "offered to produce these documents subject to a protective order", but Plaintiff declined. *Id.*   Defendants argue that "if Plaintiff has no evidence to support the allegations set forth in his complaint at paragraphs 61 and 62, he should answer accordingly". *Id.* Separately, Defendants note that "Plaintiff offers no defense for his failure to adequately answer Amodio's interrogatories" in his opposition papers and, therefore, Defendants "assume that he concedes this point". *Id.*

Citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 666 (3d Cir. 1988) and *Frazier v. Southeastern Pennsylvania Transp. Authority*, 785 F.2d 65, 68 (3d Cir. 1986), Plaintiff maintains that he "is not required to provide either proof of [his] claims or a proffer of all available evidence because in civil rights cases much of the evidence can be developed only through discovery of materials held by defendant officials". *See* Pl.'s Opp'n Br. at 2.   Plaintiff argues that he "is not seeking every internal affairs investigation filed against every officer employed by Ocean Township" but rather, "internal affairs investigations concerning excessive force, false arrest, malicious prosecution, falsification of records, and those which would indicate a violent demeanor or untruthfulness". *Id.*   Plaintiff states that "once these records are received, [he] will

be able to respond with a list of every instance" but that until then, "[his] response will continue to be that he does not have specific information to respond to these interrogatories in the manner requested". *Id*.

### 2.      Document Requests.

Plaintiff states that he "has produced both personal and corporate tax returns from 2004 through 2008", that "tax returns from 2009 have not been produced by [his] accountant", and that "the returns from 2010 are not yet completed. *Id*. at 2-3. Plaintiff maintains that "there remains a balance on [his] bill with his accountant", that "the accounting firm will not release these documents...until the balance is paid in full", and that "when [he] receive[s] the returns for 2009 and 2010 they will be provided" to Defendants. *Id*. In response, Defendants state that they "do not withdraw their motion to compel production of Plaintiff's individual and corporate 2009 state and federal tax returns, state and federal individual and corporate 2010 returns when filed, and any and all documents which support Plaintiff's claim for lost wages and lost opportunity, including those documents which formed the underlying basis for the filing of Plaintiff's tax returns from 2004 to the present". *See* Def.'s Reply Br. at 1. Defendants maintain that "assuming that...tax returns were in fact filed, Plaintiff could have completed a taxpayer request form and obtained a copy of the filed returns directly from the Internal Revenue Service and from the New Jersey Division of Taxation". *Id*. at 2.

Plaintiff states that it is his understanding that Defendants "are seeking to compel an owner's manual for [his] truck and trailer". *See* Pl.'s Opp'n Br. at 3. Plaintiff maintains that he "originally informed Defendants that the manual for the trailer was not in his possession and could not be produced" and "this has not changed". *Id*. Separately, although he "originally believed that he did possess the manual for his truck", Plaintiff now represents that "he does

21

not". *Id*. Plaintiff states that "neither...[manual is] in [his] possession" and cannot be produced. *Id*. Plaintiff directs Defendants to the internet for purposes of information "to determine the specifications of the trailer and truck". *Id*. In response, Defendants "withdraw their motion to compel production of the owner's manual for Plaintiff's truck based on counsel's current representation that it is not in his possession". *See* Def.'s Reply Br. at 1.

Plaintiff states that it is his understanding that Defendants "seek to compel production of one specific photograph of [his] truck that was taken on [Plaintiff's] cellular phone and marked into evidence during his municipal court trial". *See* Pl.'s Opp'n Br. at 3. Plaintiff maintains that he "informed Defendants that there have been technical difficulties in obtaining this photograph and that it may be permanently deleted". *Id*. Specifically, Plaintiff states that the photograph is "on a cell phone which he no longer uses" and that, although he "possesses the phone...it is locked via a passcode...[that he] does not have". *Id*. Further, Plaintiff states that "the photograph was never printed or sent to another medium for retrieval". *Id*. As such, Plaintiff contends that the "specific photograph sought is not in [his] possession". *Id*. However, Plaintiff states that "there are other photographs of [his] truck and trailer which fairly and accurately depict the condition of each on the date in question" and that same "are in the process of being duplicated in color and will be produced by the return date". *Id*. In response, Defendants state that they "do not withdraw their motion to compel production of photographs taken of Plaintiff's truck on August 8, 2008". *See* Def.'s Reply Br. at 1.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Importantly, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994). "Review of all relevant evidence provides each party with a fair

opportunity to present an effective case at trial". *Jones*, 238 F.R.D. at 163; *see also Caver*, 192 F.R.D. at 159; *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession". *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility". *Id*.; *see also Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). Importantly, "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor". *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979); *Nestle Foods*, 135 F.R.D. at 104-105.

However, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG v. Betachem, Inc*., 173 F.3d 188, 191 (3d Cir. 1999). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry". *Takacs*, 2009 WL 3048471, at *1 (*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co*., 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co*., 130 F.R.D. 543, 551 (D.N.J. 1990).

2.     *Monell* and § 1983 Liability

Initially, the Court notes that in the context of criminal proceedings where "the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the New Jersey Constitution" guarantees "the right of an accused in a criminal prosecution to be confronted with the witnesses against him", "courts have permitted the disclosure of police personnel records where they may reveal prior bad acts that bear 'peculiar relevance' to the issues at trial".  *State v. Harris*, 316 N.J. Super. 384, 397-98 (App. Div. 1998).  "In cases involving assault on a police officer, courts have concluded that allegations concerning the officer's use of excessive force in making an arrest are relevant to the assault issue.  Further, courts generally allow either direct or *in camera* inspection of police personnel records when the defense claims the officer was the aggressor and the court finds that parts of the officer's personnel history may be relevant to the officer's credibility or to the defendant's claim of self-defense".  *State v. Harris,* 316 N.J. Super. at 398; *see also State v. Pohl*, 89 N.M. 523 (N.M. Ct. App. 1976); *Pitchess v. Superior Court of L.A. County*, 11 Cal. 3d 531 (Cal. Sup. Ct. 1974); *State v. Fleischman*, 10 Ore. App. 22 (Or. Ct. App. 1972).  Oppositely, "courts have refused to permit an *in camera* inspection of an officer's personnel file where the defendant failed to make a showing that the file contained material information".  *State v. Harris*, 316 N.J. Super. at 398; *see also State v. Parker*, 886 S.W.2d 908, 917 (Mo. 1994), *cert. denied sub nom Parker v. Missouri*, 514 U.S. 1098 (1995); *Cargill v. State*, 255 Ga. 616 (Ga. 1986).

In the context of civil proceedings, "when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom".  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996);

25

*see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).  "[A]lthough the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom".  *Id.*; *see also Monell*, 436 U.S. at 694.  "[A]n official policy must be the moving force of the constitutional violation in order to establish the liability of a government body under Section 1983".  *Remillard v. City of Egg Harbor City*, 424 F. Supp. 2d 766, 771-72 (D.N.J. 2006); *see also Polk v. Dodson*, 454 U.S. 312, 326 (1981).

"A government policy or custom can be established in two ways.  Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law".  *Beck*, 89 F.3d at 971; *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 & n.10 (1986); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989), *cert. denied*, 492 U.S. 919 (1989).  "Custom...may also be established by evidence of knowledge and acquiescence".  *Id.*; *see also Fletcher*, 867 F.2d at 793.  Importantly, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact".  *Id.* at 971-72; *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "[C]ourts have adopted the deliberate indifference standard in other policy and custom contexts...[and] this is consistent with the Court's narrow construction of municipal liability under 42 U.S.C. § 1983 since *Monell*, limiting municipal liability to only those constitutional torts actually caused by the municipality".  *Id.* at 972; *see also Simmons v. City of*

*Philadelphia*, 947 F.2d 1042, 1070 (3d Cir. 1991), *cert. denied*, 503 U.S. 985 (1992); Karen M. Blum, *Monell, DeShaney, and Zinermon: Official Policy, Affirmative Duty, Established State Procedure and Local Government Liability Under Section 1983*, 24 CREIGHTON L. REV. 1, 13 (1990); Michael T. Burke & Patricia A. Burton, *Defining the Contours of Municipal Liability Under 42 U.S.C. § 1983: Monell through City of Canton v. Harris*, 18 STETSON L. REV. 511, 547 (1989).

Thus, in order "to sustain a § 1983 claim for municipal liability, the plaintiff must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury". *Beck*, 89 F.3d at 972; *see also Bielevicz*, 915 F.2d at 851. "[P]roof of the existence of an unlawful policy or custom alone is insufficient to maintain a § 1983 action...[as] the plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered". *Id.* at 972 & n.6; *see also Bielevicz*, 915 F.2d at 850; *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue". *Bielevicz*, 915 F.2d at 850-51; *see also Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 507 (3d Cir. 1985); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury". *Id.* at 851; *see also Black v. Stephens*, 662 F.2d 181, 190-91 (3d Cir. 1981), *cert. denied*, 455 U.S. 1008 (1982). Thus, "if the [municipality] is shown to have tolerated known misconduct by police officers, the issue whether the [municipality's] inaction contributed to the individual officers' decision...[to

act] unlawfully...is a question of fact for the jury". *Id.* "...A municipality's failure to act, once it [is] on notice that its procedures [are] constitutionally deficient, create[s] a fact question respecting causation". *Id.*; *see also Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).

"A state official may also be held responsible under § 1983 for failing to exercise supervisory authority, but only if that official has exhibited deliberate indifference to the plight of the person deprived". *Remillard*, 424 F. Supp. 2d at 772; *see also Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "Accordingly, a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval". *Id.*; *see also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997); *Colburn*, 838 F.2d at 673.

### 3.      Interrogatories to Parties

Pursuant to FED. R. CIV. P. 33,

> ...(a)(2) Scope.  An interrogatory may relate to any matter that may be inquired into under Rule 26(b).  An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

> ...(b)(3) Answering Each Interrogatory.  Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

> (4) Objections.  The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

...(d) Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

"The more progressive approach to interrogatories dealing with legal matters is to view them in the factual context within which they arise".  *Microtron Corp. v. Minnesota Mining & Mfg. Co.*, 269 F. Supp. 22, 25 (D.N.J. 1967); *see also Singer Manufacturing Co. v. Brother International Co.*, 191 F. Supp. 322 (S.D.N.Y. 1960).  "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require [an] answer".  *Id.*; *see also* 4 Moore's Federal Practice, 2d Ed. 2534; *Gagen v. Northam Warren Corp.*, 15 F.R.D. 44 (S.D.N.Y. 1953).

### 4.    Requests for Production of Documents

Pursuant to Fed. R. Civ. P. 34,

(a) In General.  A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information – including writings, drawings,

29

graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

(b) Procedure.

(1) Contents of the Request.  The request:

(A) must describe with reasonable particularity each item or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) Responses and Objections.

(A) Time to Respond.  The party to whom the request is directed must respond in writing within 30 days after being served.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) Responding to Each Item.  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

(C) Objections.  An objection to part of a request must specify the part and permit inspection of the rest.

30

(D) Responding to a Request for Production of Electronically Stored Information.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form – or if no form was specified in the request – the party must state the form or forms it intends to use.

(E) Producing the Documents or Electronically Stored Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Pursuant to FED. R. CIV. P. 26(b)(5),

(A) Information Withheld.  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Pursuant to L. CIV. R. 34.1,

> Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked.   When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

Importantly, the Court notes that "it is not sufficient to merely state a generalized objection; instead, the objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it".   *G-69 v. Degnan*, 130 F.R.D. 326, 331; *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982), 8 Wright & Miller, Federal Practice and Procedure § 2035 at 264-265.   "The Third Circuit has rejected broadside invocations of privilege which fail to designate with particularity the specific documents or file to which the claim of privilege applies".   *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209-10 (D.N.J. 1996); *see also United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980).   In order to analyze a privilege claim, some courts have required the asserting party to provide "the date of the document, the name of its author, the name of its recipient, the name of all people given copies of the document, the subject of the document and the privilege or privileges asserted".   *Wei v. Bodner*, 127 F.R.D. 91, 96 (D.N.J. 1989); *see also Jaroslawicz v. Engelhard Corp.*, 115 F.R.D. 515, 516 (D.N.J. 1987); *Kelchner v. International Playtex, Inc.*, 116 F.R.D. 469 (M.D. Pa. 1987); *United States v. Exxon Corp.*, 87 F.R.D. 624 (D.D.C. 1980); *Bierman v. Marcus*, 122 F. Supp. 250 (D.N.J. 1954).

### 5.   Governmental Privilege

"The application of a privilege in federal court is governed by Fed. R. Evid. 501 which

provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege". *Torres*, 936 F. Supp. at 1207-08. "A federal court sitting in a non-diversity case may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state". *Id.*; *see also D'Oench, Duhme & Co. v. Federal Deposit Insur. Corp.*, 315 U.S. 447, 471 (1942). "When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply". *Id.* at 1208; *see also Gannet v. First Nat'l State Bank of New Jersey*, 546 F.2d. 1072, 1076 (3d Cir. 1976), *cert. denied*, 431 U.S. 954 (1977). "Where...the complaint alleges both a federal question claim and pendent state law claims, the federal common law of privilege applies to all claims". *Id.*; *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3d Cir. 1982); *Wei v. Bodner*, 127 F.R.D. 91 (D.N.J. 1989).

"There appears to be no continuity among federal courts regarding what privileges can be invoked by law enforcement officials when defending against a civil rights claim. ...Federal Courts, when analyzing privilege issues in civil rights claims, may look to state law to determine what interests have inspired state privilege laws and the importance given to these interests by the state legislatures". *Id.*; *see also Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Ca. 1987). "[I]n light of the policies driving civil rights statutes, state law is necessarily not determinative of what evidence is discoverable, but rather is there to guide the courts in their assessment of the interests of the government" as it "would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose

central purpose is to protect citizens from abuses of power by state and local authorities". *Id*; *Kelly*, 114 F.R.D. at 656.

"A claim of governmental privilege in a § 1983 case must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action". *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987); *see also Wood v. Breier*, 54 F.R.D. 7, 13 (E.D. Wis. 1972); *Crawford v. Dominic*, 469 F. Supp. 260, 263 (E.D. Pa. 1979). Factors to be considered in "balancing the protection of police files against the rights of a civil rights claimant" include:

> (1) the extent to which disclosure will discourage citizens from giving the government information;

> (2) the impact upon such persons of having their identities disclosed;

> (3) the degree to which governmental self-evaluation and program improvement will be chilled by disclosure;

> (4) whether the information sought is factual or evaluative;

> (5) whether the party seeking discovery is or may become a defendant in a criminal proceeding stemming from the incident in question;

> (6) whether the police investigation has been completed;

> (7) whether departmental disciplinary proceedings have arisen or may arise from the investigation;

> (8) whether the plaintiff's suit is brought in good faith;

> (9) whether the information sought is available through other sources; [and]

> (10) the importance of the information sought to the plaintiff's case.

*Id*. at 496; *see also Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); *Torres*, 396 F.

Supp. at 1209-10.  "[T]he weightiest factor is the importance of the information to the plaintiff's case".  *Id.*; *see also Crawford*, 469 F. Supp. at 263.

Importantly, "a claim of executive or law enforcement privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted precise and certain reasons for preserving the confidentiality of the communications".  *Torres*, 396 F. Supp. at 1210; *see also United States v. O'Neill*, 619 F.2d at 226.  "Some courts insist upon specific items that must be included in this affidavit" including:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material);
>
> (2) a statement that the official has personally reviewed the material in question;
>
> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer;
>
> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest; and
>
> (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Id.*; *see also Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly*, 114 F.R.D. at 670.

Overall, "the balancing test for determining whether the law enforcement privilege applies must be conducted with an eye towards disclosure".  *Id*.  "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth".  *Id.* at 1210-11; *see also United States v. Nixon*, 418 U.S. 683, 710 (1974); *Wei*, 127 F.R.D. at 96; *Miller*, 141 F.R.D. at 300.

Separately, "what is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law". *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *see also Scher v. United States*, 305 U.S. 251, 254 (1938); *In re Quarles and Butler*, 158 U.S. 532 (1895); *Vogel v. Gruaz*, 110 U.S. 311, 316 (1884). "The purpose of the privilege is the furtherance and protection of the public interest in their effective law enforcement...[and] recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation". *Id*. "The scope of the privilege is limited by its underlying purpose...[such that] where the disclosure of the contents of a communication will not tend to reveal the identify of an informer, the contents are not privileged...[and,] likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable". *Id*. at 60; *see also Foltz v. Moore McCormack Lines*, 189 F.2d 537, 539-40 (1951); *Sorrentino v. United States*, 163 F.2d 627, 629 (9th Cir. 1947). "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness...[such that] where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way". *Id*.; *see also Scher*, 305 U.S. at 254. "Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication". *Id*.

36

## 6.        Complaints, Personnel Files, and Internal Affairs Files

"[W]hen a § 1983 civil rights claim is made, the extent of the supervisors' knowledge of and participation in the acts of their subordinates determines the scope of the municipality's liability". *Scouler*, 116 F.R.D. at 496; *see also Spell v. McDaniel*, 591 F. Supp. 1090, 1118 (E.D.N.C. 1984); *Crawford*, 469 F. Supp. at 263.   "[S]upervisory evaluations should not be shielded unless, as to each assertedly privileged evaluation, defendants are able to make a strong showing that confidentiality is vital to the decision-making process of the municipality or would otherwise substantially harm the public interest". *Id.*; *see also Spell*, 591 F. Supp. at 1118; *Urseth v. City of Dayton*, 110 F.R.D. 245, 256 (S.D. Oh. 1986); *Skibo v. City of New York*, 109 F.R.D. 58 (E.D.N.Y. 1985); *Dos Santos v. O'Neill*, 62 F.R.D. 448 (E.D. Pa. 1974).   Further, "...because documentation of civilian complaints and the police department's resultant investigations are relevant and necessary to the plaintiffs' burden of establishing the requisite policy or custom and causation required for municipal liability under § 1983, and because documents which span a number of years and involve many...police officers may be necessary to establish such a policy or custom", courts have "found civilian complaints highly relevant to the plaintiff's burden of proving that [a municipality] had a custom of permitting its police officers to use excessive force in the performance of their duties". *Torres*, 936 F. Supp. at 1206.   Courts have "considered as evidence a number of such complaints which spanned a time period longer than two years prior to the incident giving rise [to] the...complaint and complaints involving officers other than the officer who allegedly violated plaintiff's...constitutional rights" as well as complaints regarding "incidents that occurred after plaintiff's experience, since such complaints may have evidentiary value for a jury's consideration [of] whether the [municipality] and policymakers had a pattern of tacitly approving the use of excessive force". *Id.*

With respect to personnel files, pursuant to *N.J.S.A.* 47:1A-10,

> Notwithstanding the provision of P.L.1963, c. 73 (C.47:1A-1 et seq.) or any other law to the contrary, the personnel or pension records of any individual in the possession of a public agency, including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access, except that:

> > an individual's name, title, position, salary, payroll record, length of service, date of separation and the reason therefor, and the amount and type of any pension received shall be a government record;

> > personnel or pension records of any individual shall be accessible when required to be disclosed by another law, when disclosure is essential to the performance of official duties of a person duly authorized by this State or the United States, or when authorized by an individual in interest; and

> > data contained in information which disclose conformity with specific experiential, education or medical qualifications required for government employment or for receipt of a public pension, but not including any detailed medical or psychological information, shall be a government record.

However, "the exemption does not immunize personnel records from discovery, nor does it cloak the records with a privilege to justify their non-production". *V.A. ex rel. M.A. v. New Jersey National Guard Challenge Youth Program*, 2007 WL 980453, at *3 (D.N.J. 2007). "If the information contained in defendant's personnel file is relevant to issues in [the] case[,] the information must be produced...[because] there is no legal authority that bars a plaintiff from discovering relevant information in a defendant's personnel file". *Id.*; *see also Jones*, 238 F.R.D. at 164; *Scouler*, 116 F.R.D. at 496. Importantly, "any claim of governmental privilege must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action", although "the relevancy of certain documents must be viewed

in light of the allegations of the complaint". *Id.*; *see also Scouler*, 116 F.R.D. at 496; *Wood*, 54 F.R.D. at 13.    In *V.A.*, the court ruled that "any past complaints, performance evaluations, disciplinary proceedings or general information about...hiring and training are highly relevant" when § 1983 allegations are lodged against a particular police officer.  *Id.*  Oppositely, however, "personal information...such as benefits, salary, or medical information [are] not relevant".  *V.A.*, 2007 WL 980453, at *3.

### 7.    Attorney General Guidelines

With respect to the confidentiality of internal affairs files, the Attorney General Guidelines state:

> The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information.  The contents of the internal investigation case files shall be retained in the internal affairs unit and clearly marked as confidential.  The information and records of an internal investigation shall only be released under the following limited circumstances:
>
>> -In the event that administrative charges have been brought against an officer, and a hearing will be held, a copy of those internal investigation reports to be used as evidence in the administrative hearing shall be provided to the officer.
>>
>> -In the event that the subject officer, agency or governing jurisdiction has been named as a defendant in a lawsuit arising out of the specific incident covered by an internal investigation, a copy of the internal investigation reports may be released to the attorney representing the subject officer, agency or jurisdiction.
>>
>> -Upon the request or at the direction of the county prosecutor or Attorney General.
>>
>> -Upon a court order.
>
> The law enforcement executive officer may authorize access to a particular file or record for good cause.  The request and the

authorization should be in writing, and the written authorization
should specify who is being granted access, to which records
access is being granted, and for what time period access is
permitted.  The authorization should also specify any conditions,
such as one in which the files may be reviewed only at the internal
affairs office and may not be removed.  The law enforcement
executive should grant such access sparingly, keeping in mind the
purpose of the internal affairs process and the nature of many of
the allegations against officers.

Agencies may receive subpoenas directing the production of
internal affairs investigative records.  Before responding to the
subpoena, the police executive or internal affairs investigator
should consult with the agency's legal counsel to determine
whether the subpoena is valid and reasonable.  Invalid or
unreasonable subpoenas may be modified or quashed by the court.
However, the court will require the agency seeking to modify or
quash the subpoena to file the appropriate motion with the court.

If the release of internal affairs documents is appropriate,
the agency should inventory the reports they are releasing and
obtain a signed receipt.

Separately, with respect to personnel files, the Attorney General Guidelines state:

Personnel records are separate and distinct from internal affairs
investigation records.  Internal affairs investigation reports shall
never be placed in personnel records.  When a complaint has a
disposition of exonerated, not sustained, or unfounded, there shall
be no indication in the employee's personnel file that a complaint
was ever made.

In those cases where a complaint is sustained and discipline
imposed, the only items to be placed into the employee's personnel
file are a copy of the administrative charging form and a copy of
the disposition form. ...No part of the internal affairs investigation
report shall be placed in the personnel file.

**B.   Plaintiff's Motion**

With respect to Plaintiff's request for the "personnel files" of Vaccaro and Tongring,

defense counsel is directed to provide the Court with these personnel files, and Plaintiff's counsel

is directed to provide the Court with a description of the information it seeks from the personnel

files, within two (2) weeks, or by **March 28, 2011**.  Thereafter, the Court will conduct an *in camera* review of the materials and direct the production of any relevant, non-privileged documents.

With respect to Plaintiff's request for internal affairs files relating to defendants Vaccaro and Tongring, the Court finds same to be relevant based upon the allegations set forth in Plaintiff's Complaint (*see* Pl.'s Comp., dkt. entry no. 1 at 2-19).  Further, given that "the weightiest factor is the importance of the information to the plaintiff's case", the Court finds that the balance of protecting internal affairs files against Plaintiff's right to assert a civil rights claim weighs in favor of Plaintiff in this case.  *Scouler*, 116 F.R.D. at 496.  Although the Court acknowledges the confidentiality of internal affairs files pursuant to the Attorney General Guidelines and the assertion of governmental privilege by Defendants, having weighed the factors set forth in the *Frankenhauser*, *Scouler*, *Torres* line of cases and noting that the confidentiality, disclosure, and dissemination of any materials produced would be protected by the entry of a Discovery Confidentiality, the Court directs the parties to negotiate, execute, and submit a Discovery Confidentiality Order within seven (7) days, or by **March 21, 2011**.  Upon entry of the Discovery Confidentiality Order, the Court directs Defendants to produce the internal affairs files for Vaccaro and Tongring within two (2) weeks, or by **April 4, 2011**.

With respect to Plaintiff's request for all internal affairs files for any other officer employed by the Township of Ocean who may have had an internal affairs complaint filed against him/her with respect to excessive force, false arrest, malicious prosecution, and demeanor complaints which might indicate violent propensities and/or untruthfulness during the five (5) years preceding the alleged incident, the Court finds that although same may be relevant based upon the facts alleged by Plaintiff, the confidentiality of internal affairs files pursuant to the

Attorney General Guidelines and the assertion of governmental privilege by Defendants weigh against immediate production.  Further, pursuant to *Monell, Beck, Bielevicz*, and *Galliano v. Borough of Seaside Heights*, 2007 WL 979850, at *19 (D.N.J. 2007), the Court finds Plaintiff's request for all departmental internal affairs files, including all demeanor complaints which indicate violent propensities and/or untruthfulness, spanning a five (5) year period to be excessive when proffered in the abstract and absent any context.  Therefore, defense counsel is directed to produce a privilege log that corresponds to the requirements set forth in *Wei*, 127 F.R.D. at 96, as to departmental internal affairs files with regard to excessive force, false arrest, malicious prosecution, and demeanor complaints which indicate violent propensities and/or untruthfulness for a five (5) year period preceding August 5, 2008, the date of the alleged incident, within two (2) weeks, or by **March 28, 2011**.  The Court directs Defendants to include specific descriptions outlining the general circumstances surrounding the relevant demeanor complaints.

With respect to Plaintiff's application for an award of counsel fees and costs, the Court declines Plaintiff's request to impose same.  The Court finds that, despite the contentious nature of this discovery dispute, the parties' respective positions were asserted in good faith.

### C.    Defendants' Motion

Initially, the Court notes that Defendants have withdrawn their request to compel production of the Owners' Manuals for the truck and trailer Plaintiff was operating on the date of the incident.

With respect to Defendants' request for Plaintiff's individual tax returns, corporate tax returns for R.B. Dawson Transport, Inc. ("corporate tax returns"), and all other documents supporting Plaintiff's claim for lost wages and lost economic opportunity, the Court directs

42

Plaintiff to produce individual tax returns for 2009, corporate tax returns for 2004-2009, and all other documents which support Plaintiff's claim for lost wages and lost economic opportunity by **March 28, 2011** to the extent they exist.  Upon the filing of individual tax returns and corporate tax returns for 2010, Plaintiff is directed to produce same within seven (7) days of filing.  To the extent individual tax returns, corporate tax returns, and/or documents which support Plaintiff's claim for lost wages and lost economic opportunity do not exist or have not been filed for 2004-2010, Plaintiff is directed to indicate same, in writing, to Defendants by **March 28, 2011**.  Plaintiff is directed to supplement his fact and expert discovery according to the Federal Rules of Civil Procedure with respect to additional documents which support Plaintiff's claim for lost wages and lost economic opportunity.

With respect to Defendants' request for photographs of Plaintiff's trailer and tractor taken on August 5, 2008 which were marked as D-4 in evidence at [Plaintiff's] Municipal Court trial, although the Court acknowledges Plaintiff's representations as to the inaccessibility of the relevant cellular phone, the Court finds that the photographs may be in Plaintiff's possession, custody, and control and finds Defendants' request to be reasonable.  The Court finds this situation analogous to that in which a party would be required to enlist the services of a locksmith to open an inaccessible lock safeguarding relevant discovery items within that party's possession, custody, and control.  As such, the Court directs Plaintiff to produce any/all photographs in his possession, custody, and control, including, but not limited to, those taken on August 5, 2008 which were marked D-4 in evidence at Plaintiff's Municipal Court trial by **March 28, 2011**.

With respect to Defendants' request for fully responsive answers fully responsive answers to Tongring's interrogatories 1-14, 18, 19, and 20 and Amodio's interrogatories 1, 2, and 3, the

43

Court has reviewed all of the relevant interrogatories and Plaintiff's responses thereto and acknowledges that Plaintiff has not provided any specific opposition to Defendants' request pertaining to Amodio's interrogatories.   However, based upon the allegations set forth in Plaintiff's Complaint (*see* dkt. entry no. 1 at 2-19) and the fact that Plaintiff is not in possession, custody, or control of relevant discovery items – including, but not limited to, internal affairs files and personnel files – that would provide more fully responsive answers than those already provided by Plaintiff, the Court denies Defendants' request to compel  further responses. Plaintiff is directed to supplement his fact and expert discovery as appropriate according to the Federal Rules of Civil Procedure with respect to answers to interrogatories.

## IV.   CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 14th day of March, 2011**,**

**ORDERED** that Plaintiff's Motion to compel certain discovery including, among other things, personnel and internal affairs files [dkt. entry. no. 20] is **GRANTED** in part and **DENIED** in part consistent with the findings set forth above; and it is further

**ORDERED** that Defendants' Motion to compel certain discovery including, but not limited to, answers to interrogatories and responses to requests for productions [dkt. entry no. 21] is **GRANTED** in part and **DENIED** in part consistent with the findings set forth above; and it is further

**ORDERED** that the Court will conduct a telephone conference call on **April 8, 2011** at **11:30 a.m.** to be initiated by Plaintiffs' counsel.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**