UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY DAWSON,<br><br>    Plaintiff,<br><br>  v.<br><br>TOWNSHIP OF OCEAN, et al.,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-6274<br>       (JEI/JS)<br><br>**OPINION** |

**APPEARANCES**:

MALLON & TRANGER
By:  Michael J. Fioretti, Esq.
     Thomas J. Mallon, Esq.
86 Court Street
Freehold, NJ 07728
     Counsel for Plaintiff

SCHWARTZ & POSNOCK, ESQS.
By:  David A. Schwartz, Esq.
901 West Park Ave., Suite 2-E
Ocean, NJ 07712
     Counsel for Defendants

**IRENAS**, Senior District Judge:

   Plaintiff Rodney Dawson initiated this action pursuant to 42 U.S.C. § 1983 against the Township of Ocean, Chief of Police Antonio Amodio, Jr., Patrolman Ryan Vaccaro, and Sergeant Gregory Tongring (collectively "Defendants") to recover for alleged improper police conduct in connection with a motor vehicle infraction.[1]  Pending before the Court is Defendants' Motion for

---

   [1]  The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

1

Summary Judgment.

## I.

Plaintiff was the owner/operator of an independent trucking company known as R.B. Dawson Transport, Inc.  (Defs' 56.1 Stat. ¶ 2.)[2]  Plaintiff drove an 18-wheel tractor trailer, approximately 53 feet long and 13 feet high.  (*Id.* ¶¶ 3-4.)

On August 5, 2008, Plaintiff was delivering rubber playground material to the Hillel Yeshiva school located on Deal Road in Ocean, New Jersey.  (*Id.* ¶ 6.)  Plaintiff missed the entry point to the school premises and continued down Deal Road until he located an area where he could turn the truck around and return to the school.  (*Id.* ¶ 7.)  At Deal and Browne Roads where a stop sign sits on an island in the four-way intersection, Plaintiff executed a K-turn.  (*Id.* ¶¶ 8-9.)  A female motorist stopped near the intersection to wait for Plaintiff's truck to clear the intersection.  (*Id.* ¶ 10.)

On this same day, an anonymous eyewitness called the Ocean Township Police Department (the "Police Department") to report that a vehicle knocked down the stop sign at the intersection of Deal and Browne Roads.  (*Id.* ¶ 15.)  The anonymous caller provided the Police Department with the vehicle's license plate number.  (*Id.* ¶ 17.)  With this information, the Police

---

[2]  References to "Defs' 56.1 Stat." are to Defendants' statement of undisputed material facts submitted in support of their Motion.

Department learned the name and phone number of Plaintiff, to whom the vehicle was registered. (*Id.* ¶ 19.) Plaintiff was called by Patrolman Valenti and told that his truck was reported to be involved in a hit and run accident at the intersection of Deal and Browne Roads. (*Id.* ¶ 20.) Plaintiff acknowledged that he had been in that area while making a delivery to Hillel Yeshiva school. (*Id.* ¶ 22.) Plaintiff was instructed to wait at the school for an officer to arrive. (*Id.* ¶ 23.)

Defendant Patrolman Vaccaro arrived at the scene of the accident and observed the stop sign lying flat on the ground and tire marks in the mulch surrounding the sign. (*Id.* ¶¶ 25-27.) Because Patrolman Vaccaro was then dispatched to an emergency call, Patrolman Valenti called Plaintiff a second time to ask him to report to the Police Department and that it was "not a big deal." (*Id.* ¶¶ 31-33; Schwartz Cert. Ex. 8 (recording), track 10.) Because Plaintiff was concerned about the size of his truck, Mr. Shabot of the Hillel Yeshiva school drove him to the Police Department. (*Id.* ¶ 36; Pl's Resp. ¶¶ 35-36.)

At the Police Department, Patrolman Vaccaro asked Plaintiff for his license, registration and insurance card several times. (*Id.* ¶ 56; Schwartz Cert. Ex. 3 (Pl's dep.) 92:24-25, 94:21-22. 96:11-13.) Each time, Plaintiff failed to produce the documents

3

and instead asked why they were necessary.³ (*Id.*)  This back and forth between Plaintiff and Patrolman Vaccaro continued for several minutes.  (*Id.* ¶ 58.)

For reasons that are disputed by the parties and not relevant for the purposes of the present Motion, Patrolman Vaccaro left Plaintiff to speak with his supervisor, Sergeant Tongring.  According to Patrolman Vaccaro, he told Sergeant Tongring that a suspect in a hit and run accident was refusing to turn over his license, registration and insurance card, thereby preventing Patrolman Vaccaro from completing his accident report.  (*Id.* ¶ 61.)  Patrolman Vaccaro stated that he had probable cause to believe that Plaintiff was involved.  (*Id.* ¶ 62.) Sergeant Tongring instructed him to ask again for the driving credentials and to arrest Plaintiff for obstruction of justice if he still refused to turn over the documents.  (*Id.*)  Patrolman Vaccaro returned to where Plaintiff was waiting, asked him again for the documents and informed him that noncompliance would result in his arrest for obstruction of justice.  (*Id.* ¶ 70.)  Plaintiff did not comply.  (*Id.* ¶¶ 71-72.)

What happened next is disputed by the parties.  Plaintiff contends that Patrolman Vaccaro forcefully grabbed Plaintiff's wrist, twisted it behind his back, dislocated Plaintiff's

---

    ³ There is no dispute that the documents were in Plaintiff's hand at the Police Department.  (See Defs' 56.1 Stat. ¶ 64; Pl's Resp. ¶ 64.)

shoulder, and pressed him into a glass wall. (Pl's Resp. ¶¶ 78-82, 98.) Plaintiff further contends that either Patrolman Vaccaro or Sergeant Tongring or other unidentified officers repeatedly struck him in the upper back and shoulder area. (*Id.* ¶ 98.) Defendants contend that they used only the amount of force necessary to place Plaintiff under arrest. (Defs' 56.1 Stat. ¶¶ 78-80.) Both Patrolman Vaccaro and Sergeant Tongring, who assisted in the arrest, testified that they simply brought Plaintiff's hands behind his back and placed him in handcuffs. (*Id.* ¶ 97.) Defendants further contend that Plaintiff resisted arrest by attempting to keep his hands away, and that no other officers or detectives participated in the arrest. (*Id.* ¶ 86.) Plaintiff denies that he resisted arrest. (Pl's Resp. ¶ 86.)

After being handcuffed, Plaintiff was brought into the booking room, where he was seated on a bench with his left hand out of the handcuffs and his right one handcuffed to the bench. (Defs' 56.1 Stat. ¶¶ 78-80, 134.) At this point, Plaintiff claims that his shoulder forced his body to fall off the bench and onto the floor. (*Id.* ¶ 136.) Although Plaintiff did not request medical attention, Sergeant Tongring called Oakhurst First Aid Squad. (*Id.* ¶¶ 145-46.) The first aid responder examined Plaintiff's shoulder and found no swelling, deformity or other abnormality. (*Id.* ¶¶ 152-54.) Nevertheless, Plaintiff was taken to Monmouth Medical Center. (*Id.* ¶ 162.) X-rays of

5

Plaintiff's shoulder found no evidence of fracture, dislocation, soft tissue swelling, or acromio-clavicular separation. (*Id.* ¶ 173.)

Plaintiff's municipal court trial on the obstruction of justice charge occurred on January 6, 2009 and January 13, 2009. (*Id.* ¶ 194.)  At the conclusion of trial, Plaintiff was convicted of the charge pursuant to N.J.S.A. 2C:29-1.  (*Id.* ¶ 196.) Following an appeal and a trial de novo in the Monmouth County Superior Court, Law Division, Plaintiff's conviction was overturned.  (*Id.* ¶¶ 198-201.)

Plaintiff initiated the action in this Court on December 11, 2009 by filing a 13-Count Complaint.  Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for excessive force, false arrest, malicious abuse of process, malicious prosecution, failure to intervene, and supervisory liability.[4]  Plaintiff also asserts

---

[4] Section 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

parallel state constitutional and common law claims.[5]  Plaintiff did not file a notice of tort claim pursuant to N.J.S.A. § 59:8-4.  (*Id.* ¶ 230.)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v.*

---

[5] Plaintiff agrees that he has "abandoned" his § 1983 claim for municipal liability and his claim for injunctive relief as contained in Counts Seven and Eight of the Complaint.  (*See* Defs' 56.1 Stat. ¶ 229; Pl's Resp. ¶ 229.)  These are the only claims asserted against Defendants Ocean Township and Antonio Amodio, Jr.  Therefore, summary judgment will be granted to Defendants on these claims and Defendants Ocean Township and Antonio Amodio, Jr. will be terminated as parties to this action.

*Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment, of course, looks only to admissible evidence."  *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact).

### III.

### A.

Defendants move for summary judgment on Plaintiff's constitutional claims for excessive force, false arrest, malicious abuse of process, malicious prosecution, failure to intervene, and supervisory liability arguing that there is insufficient evidence to sustain these claims, and that Defendants are entitled to qualified immunity.

With respect to Plaintiff's excessive force claim, the Court finds that Plaintiff has demonstrated that there is a genuine dispute of material fact as to whether Defendants used excessive force in effecting Plaintiff's arrest.  While Defendants contend

that they used minimal force in making the arrest, Plaintiff's testimony is that his arms were forcefully grabbed and twisted, his shoulder dislocated, and his back punched. Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Defendants used excessive force in effecting Plaintiff's arrest.

Count Three of Plaintiff's Complaint asserts a claim for supervisory liability against Sergeant Tongring based on his alleged involvement in Plaintiff's arrest. To establish supervisory liability under § 1983, a plaintiff must establish that a supervisor "participated in violating the plaintiff's rights, or that he directed others to violate them, or that he, as the person in charge . . . , had knowledge of and acquiesced in his subordinates' violations." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010)(internal quotations and citation omitted).

The evidence shows that Sergeant Tongring gave instructions to Patrolman Vaccaro with respect to Plaintiff's arrest and also participated in the arrest, which according to Plaintiff's testimony was done with excessive force. The Court finds that Plaintiff has demonstrated the existence of a genuine issue of material fact as to the extent and nature of Sergeant Tongring's participation in the arrest, which precludes summary judgment on the supervisory liability claim.

In order to succeed on § 1983 claims for false arrest, false imprisonment and malicious prosecution, Plaintiff must demonstrate the absence of probable cause.  *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)(malicious prosecution); *Groman v. Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)(false imprisonment); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)(false arrest).  "[T]o insulate a defendant from liability [a court] need find only that probable cause . . . existed as to any offense that could be charged under the circumstances."  *Johnson v. Knorr*, 477 F.3d 75, 84-85 (3d Cir. 2007)(internal quotations and citation omitted).  Probable cause to arrest exists if, given the totality of the circumstances, a prudent person could "believe that a crime has been committed and the person to be arrested committed it."  *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002).

Plaintiff cannot make such the requisite showing to sustain his claims for false arrest, false imprisonment and malicious prosecution, as the record conclusively demonstrates the existence of probable cause to support the charge of obstruction of justice.[6]  It is undisputed that Plaintiff was asked several

---

[6] N.J.S.A. 2C:29-1 provides:
> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight,

times to turn over his license, registration and insurance card to Patrolman Vaccaro in connection with an eyewitness report of an accident involving a vehicle with a license plate number registered to Plaintiff. It is also undisputed that Plaintiff did not turn over these documents when asked repeatedly by Patrolman Vaccaro. Under these circumstances, a reasonable person would believe that Plaintiff was guilty of obstructing justice.[7] *See State v. Perlstein*, 206 N.J. Super 246, 253 (App. Div. 1985)(concluding that an individual's refusal to produce her driver's license and car registration constituted obstruction because her actions were an independent unlawful act). Therefore, because Plaintiff cannot establish the absence of probable cause in connection with his arrest for obstruction of justice, his claims for false arrest, false imprisonment or malicious prosecution must fail.

"A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v.*

---

           intimidation, force, violence, or physical
           interference or obstacle, or by means of any
           independently unlawful act.
N.J.S.A. 2C:29-1(a).

[7] Indeed, Judge Anthony Mellaci of the New Jersey Superior Court, Law Division, noted during Plaintiff's trial de novo that "[t]here is no question probable cause existed for filing of the obstruction charge here." (*See* Schwartz Dec. Ex. 30 (Superior Court transcript) at 20-21.)

11

*Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989).  "The gravamen of [an abuse of process claim] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."  *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  "To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."  *Ference v. Twp. of Hamilton*, 538 F.Supp.2d 785, 798 (D.N.J. 2008).

Plaintiff has failed to come forth with evidence supporting his malicious abuse of process claim.  There is simply no evidence in the record to support an inference that Defendants committed an act or threat not authorized by the legal process or that they intended to accomplish some illegitimate objective.

Based on the foregoing analysis, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's state and federal constitutional claims for false arrest/false imprisonment, malicious prosecution, and malicious abuse of process.  Defendants' Motion will be denied as to Plaintiff's constitutional claims for excessive force, failure to intervene, and supervisory liability.

**B.**

Defendants move for summary judgment on the state law claims of assault and battery, malicious prosecution, malicious abuse of

12

process and false arrest/imprisonment, arguing that Plaintiff has failed to file a notice pursuant to the New Jersey Tort Claims Act ("TCA").

The TCA states that "[n]o action shall be brought against a public entity or public employee . . . unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this Chapter." N.J.S.A. § 59:8-3. Pursuant to the TCA, a plaintiff must sign and file a notice of tort claim with the relevant public entity within 90 days from the accrual of the cause of action. *Id.* § 59:8-8. A plaintiff who fails to file notice within the 90-day period is "forever barred from recovering against [the] public entity or employee."[8] *Id.*

Plaintiff's state law tort claims are against the Township of Ocean, a public entity, and several of its police officers, employees of a public entity. Therefore, Plaintiff was required to file a notice pursuant to the TCA within 90 days of the accrual of his claim. *See Velez v. City of Jersey City*, 180 N.J. 284, 296 (2004)(notice must be given only to the governmental entity but failure to provide notice also bars claims against

---

[8] Upon a motion by the plaintiff supported by affidavits, the court has discretion to allow a late filing of a notice of claim if made within one year of the claim accrual date provided that (1) plaintiff demonstrate "extraordinary circumstances" for his failure to meet the 90-day filing requirement and (2) that defendants are not "substantially prejudiced thereby." N.J.S.A. § 59:8-9.

13

employees).  Plaintiff failed to file any such notice.

The unambiguous terms of the TCA bar Plaintiff from bringing a tort action against Defendants.  Accordingly, summary judgment will be granted to Defendants on Plaintiff's state law claims for assault and battery, malicious prosecution, malicious abuse of process and false arrest/imprisonment.[9]

### IV.

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted as to Plaintiff's federal and state constitutional claims for municipal liability, injunctive relief, false arrest/false imprisonment, malicious prosecution, and malicious abuse of process.  Summary judgment will also be granted to Defendants on Plaintiff's state law claims for assault and battery, malicious prosecution, malicious abuse of process and false arrest/imprisonment.  Defendants' Motion will be denied as to Plaintiff's constitutional claims for excessive force, failure to intervene, and supervisory liability.

Dated: May 29, 2012

                                                s/Joseph E. Irenas
                                              **JOSEPH E. IRENAS, S.U.S.D.J.**

---

[9] The Court notes that Plaintiff's state law claims for malicious prosecution, malicious abuse of process, and false arrest/imprisonment also fail for the reasons stated *supra* section III.A.

14